Matter of Andrews (2020 NY Slip Op 02199)





Matter of Andrews


2020 NY Slip Op 02199


Decided on April 2, 2020


Appellate Division, Second Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 2, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
RUTH C. BALKIN
HECTOR D. LASALLE, JJ.


[*1]In the Matter of Leslie Andrews, an attorney and counselor-at-law. Grievance Committee for the Ninth Judicial District, petitioner; Leslie Andrews, respondent. (Attorney Registration No. 2497345)



DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Ninth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on February 3, 1993. The Grievance Committee commenced a disciplinary proceeding pursuant to 22 NYCRR 1240.8 against the respondent by the service and filing of a notice of petition dated April 24, 2018, and a verified petition dated April 25, 2018, and the respondent served and filed an undated answer on or about August 17, 2018. Subsequently, the Grievance Committee served and filed a statement of disputed facts dated August 27, 2018, which the respondent did not challenge. On or about November 26, 2018, the Grievance Committee filed a notice of supplemental petition dated November 13, 2018, and a verified supplemental petition dated November 14, 2018, and the respondent served and filed an undated response to the supplemental petition. By decision and order on motion of this Court dated November 29, 2018, inter alia, the issues raised were referred to the Honorable John M. Perone, as Special Referee, to hear and report.



Gary L. Casella, White Plains, NY (Faith Lorenzo of counsel), for petitioner.
Leslie Andrews, LaGrangeville, NY, respondent pro se.



PER CURIAM


OPINION & ORDER
. The Grievance Committee for the Ninth Judicial District served the respondent with a verified petition dated April 25, 2018, alleging seven charges of professional misconduct, and a verified supplemental petition dated November 14, 2018, alleging an additional three charges of professional misconduct. The petition and supplemental petition were amended by stipulation dated February 7, 2019. Following a hearing on February 22, 2019, and March 13, 2019, the Special Referee sustained all the charges, except for charge two, which was withdrawn. The Grievance Committee now moves to confirm the Special Referee's report and impose such discipline upon the respondent as this Court deems just and proper. The respondent has served a response wherein he contends that a sanction no greater than a two-year suspension should be imposed in view of various mitigating factors.
Charge one alleges that the respondent converted client funds by failing to preserve a down payment entrusted to him in connection with a real estate transaction, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: the respondent represented John Reed and Elizabeth Reed (hereinafter together the Reeds) in the sale of real property. In connection with that transaction, on November 17, 2015, the respondent deposited a $115,000 down payment into his attorney IOLA Trust Account (hereinafter IOLA account) held at Chase Bank. Thereafter, the purchasers cancelled the contract of sale. In April 2016, the respondent [*2]entered into a contingency fee retainer agreement with the Reeds to pursue the release of the down payment and prosecution of a lawsuit against the purchasers. According to the respondent, in September 2016, on behalf of the Reeds, he filed an action in the Supreme Court, Westchester County for, inter alia, an order directing release of the $115,000 down payment. According to the respondent, in May 2017, prior to a trial, he obtained a settlement agreement from the parties wherein the purchasers relinquished any claim to the entire $115,000 down payment.
Between August 2016 and May 2017, the balance in the respondent's IOLA account fell below $115,000, the amount that he should have been safeguarding for the Reeds, as follows:
DateBalance 
August 30, 2016 $93,753.70
September 8, 2016 $80,812.65
November 30, 2016 $87,944.75
December 30, 2016 $86,494.75
January 31, 2017 $83,294.75
February 28, 2017 $74,044.75
April 28, 2017 $72,544.75
May 31, 2017$72,544.75
The respondent did not have consent of the purchasers and the Reeds to disburse any portion of the $115,000 prior to their settlement agreement. The respondent has acknowledged that his account balance fell below the amount he should have held on behalf of the Reeds. Although the Grievance Committee requested an explanation, the respondent failed to comply with the Grievance Committee's request for additional information.
Charge three alleges that the respondent engaged in conduct adversely reflecting on his fitness to practice law by breaching his fiduciary duties to reconcile his IOLA account, in violation of rule 8.4(h) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: the respondent has admitted that he did not reconcile his IOLA account. The respondent testified at his examination under oath that he did not know if he maintained canceled checks for his account.
Charge four alleges that the respondent engaged in conduct adversely reflecting on his fitness to practice law, by failing to promptly comply with the lawful demands of the Grievance Committee, in violation of rule 8.4(h) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: the respondent appeared at the Grievance Committee's offices on February 8, 2018, and was provided two weeks from the date of his appearance to provide the following requested information: an explanation for why his IOLA account balance fell below the amount he was required to maintain, an explanation regarding an alleged mistake made by his wife, who is a signatory on the IOLA account, and records for his IOLA account, including his check register, record of the source and purpose of the funds deposited, and the purpose of the funds disbursed. To date, the respondent has neither complied with the request, nor has he requested additional time in which to do so.
By letter dated February 13, 2018, the Grievance Committee requested that the respondent provide additional information by February 23, 2018, including, inter alia, an explanation for why he took a fee exceeding 20% of the recovery in the Reed matter, and an explanation of whose money he was holding in his IOLA account as of October 31, 2015, as well as his check register, cancelled checks, deposit slips, and deposited items for his IOLA account for the period of October 31, 2015, through December 31, 2017. To date, the respondent has not complied.
By letter dated April 10, 2018, the Grievance Committee provided the respondent with reports it had prepared based upon a review of the respondent's available IOLA account records, and requested additional information by April 18, 2018. To date, the respondent has not complied.
Charge five alleges that the respondent failed to produce or make available to the Grievance Committee financial records required to be maintained by rule 1.15, in violation of rule 1.15(i) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: on January 31, 2018, the respondent was served with a court-ordered subpoena duces tecum requiring him to provide bank records for any IOLA account into which he deposited monies related to the Reeds including: (1) records of all deposits in and withdrawals from the account, which specifically identify the date, source, and description of each item deposited, as well as the date, payee, and purpose of each withdrawal or disbursement; (2) a record showing the source of all funds deposited in the account, the names of all persons for whom the funds are or were held, the amount of such funds, the description and amount, and the names of all persons to whom such funds were disbursed; and (3) [*3]all checkbooks and check stubs, bank statements, pre-numbered canceled checks (front and back), and duplicated deposit slips.
At his February 8, 2018, appearance at the office of the Grievance Committee, the respondent was asked to provide various records for his IOLA account. By letter dated February 13, 2018, another request for records was made. As of the date of the petition, the respondent has not produced any of the records requested.
Charge six alleges that the respondent is guilty of overreaching and improperly seizing from escrow a fee in excess of the agreed upon fee and thereby engaged in dishonesty, fraud, deceit, or misrepresentation, in violation of rule 8.4(c) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: the retainer agreement between the respondent and the Reeds provided, in essence, that the respondent's fee would be 10% of the recovery if the matter was settled before a lawsuit was filed; 20% of the recovery if settled between filing the lawsuit and trial; and 30% if the case was tried in court. Between February 28, 2017, and May 31, 2017, the respondent took in excess of $34,500 from the Reeds' down payment, and as of the date of the petition, the respondent has paid the Reeds $80,500 from the $115,000 recovery and taken a fee in the amount of $34,500, which is 30% of the amount recovered. As the matter did not go to trial, the respondent was not entitled to take 30% of the recovery.
Charge seven alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of rule 8.4(c) of the Rules of Professional Conduct (22 NYCRR 1200.0), by disbursing to himself funds drawn against the down payment in the Reed matter, as follows: January 19, 2016, check #2009 in the amount of $4,000, and March 9, 2016, check #2000 in the amount of $2,000. Over the time period this case took to resolve, John Reed periodically asked the respondent if the money was still in the escrow account, but the respondent concealed from John Reed the above-referenced transactions.
Charge eight alleges that the respondent is guilty of misappropriating client funds entrusted to him as a fiduciary, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0) by depositing funds he received as a fiduciary, incident to his practice of law, into his operating account held at Chase Bank, rather than into his IOLA account as follows: on March 3, 2016, the respondent deposited $26,500 relating to a real estate down payment for a transaction known as "Ghillione & Poggi to DiMattia" into his operating account. On March 11, 2016, the respondent transferred $26,500 from his operating account into his IOLA account. The respondent received a check dated May 19, 2016, in the amount of $73,800 relating to a real estate down payment for a transaction known as "Shapiro & Farber to Hu & Song" and deposited it into his operating account. On June 1, 2016, the respondent transferred $71,300 from his operating account into his IOLA account.
Charge nine alleges that the respondent is guilty of misappropriating client funds entrusted to him as a fiduciary by causing the balance in his IOLA account to fall below that which he was required to have on deposit, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: (1) on February 24, 2016, the balance in the respondent's IOLA account was $147,731.48, at a time when he should have had on deposit approximately $171,547.73, including $25,000 for Freedom Plains Presbyterian Church; $16,000 for Lathrop; $1,657.47 for Popa; $115,000 for Reed; and $13,890.26 for Wu; (2) on May 31, 2016, the balance in the respondent's IOLA account was $167,696.22, at a time when he should have had on deposit approximately $172,207.47, including $26,500 for Ghillione/Poggi; $73,800 for Shapiro/Farber; $19,250 for Armstrong; $115,000 for Reed; $1,657.47 for Popa; and $36,000 for Pompey; and (3) on August 5, 2016, the balance in the respondent's IOLA account was $126,466.75, at a time when he should have had on deposit approximately $161,525, including $115,000 for Reed; $24,025 for Schut; and $22,500 for Scrocca.
Charge ten alleges that the respondent is guilty of failing to maintain complete records of all funds, securities, and other properties of a client or third party coming into his possession and failing to render appropriate accountings to the Grievance Committee regarding them, in violation of rule 1.15(c)(3) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: By letter dated September 13, 2018, it was requested that the respondent identify the corresponding deposits for transfers of funds from his IOLA account into his operating account. To date, the respondent has failed to identify the corresponding deposits for funds transferred from his IOLA account into his operating account between November 25, 2015, through April 13, 2017.
By letter dated September 13, 2018, it was requested that the respondent identify the corresponding deposits and purposes for the following disbursements made from his IOLA account: [*4](1) on November 2, 2015, check #1988 issued in the amount of $750 to Leslie Andrews; (2) on March 9, 2016, check# 2000 issued in the amount of $3,000 to Leslie Andrews; and (3) on February 29, 2016, a withdrawal in the amount of $25,000. To date, the respondent has failed to explain these transactions.
By letter dated September 13, 2018, it was requested that the respondent identify whose funds he was holding in his IOLA account as of October 31, 2015, that encompassed the $162,040 balance. To date, the respondent has failed to identify the source or purpose of approximately $16,633.75 being held in his IOLA account as of October 31, 2015.
The respondent stipulated to all charges, with the exception of charge six. He admitted that he did not reconcile his accounts, that he mismanaged his accounts, and that the balance in his IOLA account fell below the required balances. The only real point of contention between the parties was the respondent's fee dispute with the Reeds and whether the respondent was entitled to 30% of the recovery/settlement. The respondent claimed that the filing of a request for judicial intervention (hereinafter RJI) in the action triggered the higher 30% rate on the theory that the filing of the RJI constituted "trying the case in court."
Based on the evidence adduced at the hearing, the Special Referee agreed with the Grievance Committee that the respondent's interpretation was inconsistent with a reasonable attorney's understanding of an RJI in litigation; that the respondent's belief was incredible as the case admittedly did not go to trial; and that the respondent offered no proof, other than his own self-serving testimony. We find that the respondent's interpretation was not only untenable, but was patently unreasonable. Any attorney who practices in the New York State court system understands that the mere filing of an RJI does not constitute going to trial. Inasmuch as the respondent admittedly failed to safeguard the Reed down payment and subsequently retained 30% of the recovery, when he was not entitled to do so, we find that under these circumstances the respondent engaged in a willful misappropriation.
The respondent has a prior disciplinary history consisting of an Admonition issued on April 27, 2018, for failure to respond to client communications and failure to timely respond to communications from the Grievance Committee.
In mitigation, the respondent asks that this Court consider the following factors: his remorse; his acceptance of responsibility for his transgressions; his relative inexperience as a legal practitioner having spent the majority of his career in the construction business (20 years) and his resumption of that line of employment and cessation of legal work; the financial and personal pressures he endured when he lost his life's savings as a result of the recession in 2008/2009; the depression he sank into for which he was prescribed anti-depressants; the lack of venal intent; and the fact that no clients were deprived of their money, except for the Reeds. With regard to the Reed matter, the respondent states that if this Court should determine that he is not entitled to the 30% recovery rate, then he is prepared to make full restitution to the Reeds in the amount of $11,500.
Under the totality of the circumstances, we conclude that a suspension from the practice for a period of two years is warranted. Any future application for reinstatement is conditioned on the respondent's satisfaction of any restitution order issued against him by this Court pursuant to Judiciary Law § 90(6-a).
SCHEINKMAN, P.J., MASTRO, RIVERA, BALKIN and LASALLE, JJ., concur.
ORDERED that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Leslie Andrews, is suspended from the practice of law for a period of two years, commencing May 4, 2020, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than November 4, 2021. In such application (see 22 NYCRR 691.11 and 1240.16), the respondent shall furnish satisfactory proof that during said period he (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11, and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Leslie Andrews, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is [*5]further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Leslie Andrews, shall desist and refrain from (l) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Leslie Andrews, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f); and it is further,
ORDERED that any future application for reinstatement is conditioned on the respondent's satisfaction of any restitution order issued against him by this Court pursuant to Judiciary Law § 90(6-a).
ENTER:
Aprilanne Agostino
Clerk of the Court